IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BARBARA PYLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13-0142-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Barbara L. Pyles ("Pyles") seeks judicial review of the Commissioner of Social Security's denial of her application for supplemental security income ("SSI") based on disability under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 *et. seq*. The Administrative Law Judge ("ALJ") found that while Pyles suffers from severe impairments of morbid obesity, chronic pain syndrome, degenerative disc disease and degenerative joint disease of the lumbar spine, depression, and anxiety, she retained the residual functional capacity ("RFC") to perform light work with some restrictions.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Factual and Procedural Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her application for SSI benefits on August 17, 2010, alleging a disability onset date of January 1, 2006. The Commissioner denied her application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing and on March 2,

2012, issued her decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on December 17, 2012, leaving the ALJ's decision as the Commissioner's final decision. Thus, Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[1]

---

[1] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner

Plaintiff argues the Court should reverse or remand the Commissioner's decision because: (1) the ALJ erred by failing to consider four statements submitted by Plaintiff's friends and family, and (2) the ALJ's RFC determination is not supported by substantial evidence. Both arguments are without merit.

### A. The ALJ did not err in not discussing various third-party statements.

Plaintiff contends the ALJ committed reversible error by failing to consider four "Daily Activities Questionnaires" submitted by Plaintiff's friends and family. R. at 95-110. Plaintiff argues these statements bolster her credibility because they are consistent with her own statements regarding the severity of her symptoms.

The Court holds that any error the ALJ made by not specifically discussing these questionnaires was harmless because the information contained in them was at best cumulative of other evidence the ALJ rightly discredited. Indeed, some of the answers actually undermined Plaintiff's credibility by showing she exaggerated her symptoms. An ALJ does not necessary commit reversible error by failing to specifically discuss and discredit "a third-party's statement about the claimant's condition." *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011). The third-party statements here largely reiterated Plaintiff's testimony about her daily living activities, namely, that most days she would go to the café in town and have some coffee and socialize, then go to the library; she performed some chores and took care of almost all of her

---

determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

personal needs, but her roommate did most of the cooking; and that she could not do as much as she use to do because of her back problems and pain. *Compare* R. at 95-110 *with* R. at 371, 374.

In fact, portions of the third-party statements support less restrictions than the ALJ found. For example, the ALJ gave Plaintiff the benefit of the doubt by finding her ability to maintain social functioning was mildly to moderately limited and restricting her to jobs involving no public interaction. Plaintiff then argued the ALJ should have included an even greater limitation in her RFC, restricting her ability to interact with supervisors and co-workers as well. But the third-party statements call into question whether the ALJ should have found her even mildly limited in her ability to maintain social functioning. The statements make clear that Plaintiff has friends, "has always liked people and working with people," gets "along fine with family and friends," likes to socialize, and talks and texts with her friends and family daily. R. at 95, 98, 100, 104, 107. The third-party statements also show that contrary to Plaintiff's testimony that she has a "horrible" memory, R. at 113, Plaintiff spends a lot of time reading and some time watching TV, and she remembers what she reads and watches. R. at 96-97, 100, 104, 108. Thus, the ALJ's failure to specifically discuss these third-party statements was harmless error.

  **B.**  **Substantial evidence supported the ALJ's RFC determination.**

Plaintiff also contends that the ALJ's RFC determination is not supported by substantial evidence of record. More specifically, Plaintiff argues the ALJ should have: (1) given controlling weight to her treating physicians' opinions, and (2) included a limitation in the RFC on her ability to interact with co-workers and supervisors.

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. 20 C.F.R. § 416.945. It is based on all the relevant credible evidence of record, not just evidence from medical reports or medical sources. *Id.*; *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). In determining a claimant's RFC, the ALJ may

4

consider the claimant's medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations. SSR 96-8p. In formulating an RFC, "the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect" the claimant's ability to perform exertional tasks. *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). It is the claimant's burden to prove her RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).

Here, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except she can only occasionally stoop, kneel, and crawl; she could not climb ladders, ropes, or scaffolds, or perform work that required her to balance; and she could not perform work involving the general public. R. at 15. She could, however, perform simple routine tasks and work with children. R. at 15. In reaching these conclusions, the ALJ considered opinions from three physicians, (1) Dr. Charles Plotz, M.D., a testifying medical expert who is board certified in internal medicine and rheumatology; (2) Dr. Dale Kesl, D.O., Plaintiff's pain specialist; and (3) Dr. Ahmad Aslami, M.D., Plaintiff's primary-care physician. The ALJ rejected the latter two's opinions, finding their opinions conflicted with the better supported testimony of Dr. Plotz as well as Plaintiff's own testimony.

The ALJ did not err in reaching these conclusions. The ALJ generally gives a treating physician's opinion more weight than opinions from other medical sources when determining the claimant's RFC. 20 C.F.R. § 404.1527(d). But, "[a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (internal quotation omitted). Further, an ALJ may discount an opinion of a treating physician that is

5

inconsistent with the physician's own treatment notes. *Juszczyk v. Astrue*, 542 F.3d 626, 632–33 (8th Cir. 2008).

Here, the ALJ did not err in finding that Dr. Kesl and Dr. Aslami "exaggerated" Plaintiff's work-related limitations. R. at 18. For example, Dr. Aslami opined that Plaintiff was limited in using her left arm and hand, R. at 18, 214, and Dr. Kesl imposed even greater limitations, opining that Plaintiff was limited in using both arms, hands, legs, and feet. R. at 236. As the ALJ noted, however, although Plaintiff was diagnosed with neuropathy, there was no evidence to support such a diagnosis or any associated work-related restrictions. R. at 17. For example, in March 2009, an examination of Plaintiff's left upper arm was unremarkable. R. at 205. During a follow-up appointment a few weeks later, Plaintiff exhibited normal range of motion in her upper arms. R. at 204. Similarly, during an appointment in April 2009, Plaintiff displayed no neurologic symptoms, R. at 173, and in May 2009, Dr. Kesl noted that Plaintiff moved all of her extremities well. R. at 170. Likewise, at an appointment in March 2010, Plaintiff displayed a fairly normal range of motion in her upper and lower extremities. R. at 190.

Likewise, the ALJ did not err in finding that the record did not support Dr. Kesl and Dr. Aslami's opinions regarding the functional limitations stemming from Plaintiff's back impairment. As the ALJ noted, there was "no evidence of significantly limiting pathology related to degenerative disc or joint disease." R. at 16. In fact, Dr. Kesl and Dr. Aslami often noted that Plaintiff was doing well on her medication, and their examinations often reflected fairly mild findings. For example, on March 11, 2009, Dr. Aslami noted that Plaintiff's symptoms were "fairly well controlled" and that her back pain was stable. During a May 2009 appointment, Dr. Kesl reported Plaintiff showed a fairly good range of motion, R. at 171, and his subsequent examination in June 2009 was unremarkable. R. at 168. On September 21, 2009, Dr.

6

Kesl noted Plaintiff was doing "quite well" on her current medications, and while she had tenderness in her back, she had a fairly good tandem gait. R. at 166.

Similarly, the next month, Dr. Aslami noted that Plaintiff's back pain was "fairly well controlled." R. at 195. On February 9, 2010, Dr. Aslami wrote that Plaintiff's back pain had been "fairly well stabilized," R. at 192, and on May 4, 2010, he observed that Plaintiff had been doing "quite well" after he had adjusted her medications. R. at 186. He noted that although Plaintiff had recently strained her back doing yard work, she had only "mild" tightness and tenderness in her back and straight-leg raises were negative. R. at 186. Finally, at an appointment in July 2011, Plaintiff's back examination was unremarkable with no evidence of radiculopathy. R. at 314. On November 29, 2011, Plaintiff had good balance and a good gait, she could get up and out of her chair without too much difficulty, and her back pain had improved. R. at 344.

In short, although Plaintiff experienced back pain, the ALJ properly found that the medical evidence did not support the limitations contained in Dr. Kesl and Dr. Aslami's opinions, and Dr. Plotz's testimony confirmed this finding. Because the ALJ may give less weight to a treating doctor's opinion that is "inconsistent with or contrary to the medical evidence as a whole," she did not err in determining Plaintiff's RFC by not giving more weight to the treating doctors' opinions. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Finally, Plaintiff argues the ALJ should have recognized a limitation on her ability to interact with supervisors and co-workers. This argument is without merit. There is simply no evidence in the record that Plaintiff has ever had any difficulty interacting with supervisors or co-workers, and Plaintiff—who carries the burden of proving her RFC—cites no evidence supporting any such limitation. On the contrary, as discussed above, there is evidence in the record from Plaintiff's family and friends that she is quite social.

**Conclusion**

The Court finds the Commissioner's determination is supported by substantial evidence on the record as a whole. Consequently, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:     February 18, 2014                    /s/ Greg Kays
                                                GREG KAYS, JUDGE
                                                UNITED STATES DISTRICT COURT